## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF NEW MEXICO

ERIC JAMES,

        Plaintiff,

v.                                  No. Civ. 13-424 JCH/GBW

VICENTE "JOHNNY" VALDEZ,
TONY MACE, JR., HANK GOKE,
FRANK SALCIDO, and JOHN DOES 1-10
in their individual capacities,

        Defendants.

## MEMORANDUM OPINION AND ORDER

      This Matter comes before the Court on the following motions: (1) Defendant Frank Salcido's Motion for Summary Judgment and Memorandum of Points and Authorities in Support Thereof (ECF No. 33); Defendant Johnny Valdez, Tony Mace, Jr., and Hank Goke's (hereinafter, collectively, the "Sheriff Defendants") Motion for Summary Judgment (ECF No. 37); and (3) Plaintiff's Rule 56(d) Motion to Deny, Defer Ruling on, or Extend Time to Respond to Defendants' Motions for Summary Judgment (ECF No. 44). The Court, having considered the motions, briefs, evidence, applicable law, and otherwise being fully advised, concludes that Plaintiff's Rule 56(d) Motion should be granted and discovery permitted on all Plaintiff's claims except his Fourth Amendment claim in Count II upon which qualified immunity for Defendants should be granted. Defendants' motions for summary judgment will therefore be granted as to Count II, but otherwise denied at this time, with leave to re-file at the close of discovery. The Court will also lift the stay to the limited extent of permitting the discovery requested in Plaintiff's Rule 56(d) motion.

## I.      FACTUAL BACKGROUND

On March 2, 2009, a New Mexico State Police Officer filed an Affidavit for Arrest Warrant for Eric James in the Thirteenth Judicial District Court in the County of Cibola, New Mexico, for the following offenses:  assault on a household member in violation of N.M. Stat. § 30-3-12(A)(1) (a petty misdemeanor), battery against a household member in violation of N.M. Stat. § 30-3-15 (a misdemeanor), child endangerment in violation of N.M. Stat. § 30-6-1(D)(1) (a 3rd degree felony), and tampering with evidence in violation of N.M. Stat. § 30-22-5 (a 4th degree felony).  *See* Aff. for Arrest Warrant, ECF No. 38-1.  Assistant District Attorney Kristina Faught Hollar approved the Affidavit for Arrest Warrant.  *See id.*  The Honorable Camille Olguin of the Thirteenth Judicial District Court signed and issued the Warrant for Arrest on March 2, 2009, finding probable cause to arrest Eric James on the four charges set forth in the Affidavit for Arrest Warrant.  *See* Warrant for Arrest, ECF No. 38-2.  In the blank space for the bond amount on the Warrant, Judge Olguin wrote, "No Bond."  *See id.*  None of the Defendants participated in the preparation or execution of the Affidavit for Arrest Warrant or had any knowledge of the facts and circumstances that led to the issuance of the warrant, including any facts indicating a lack of probable cause for its issuance.  *See* Aff. of Frank Salcido ¶ 7-8, ECF No. 33-10; Aff. of Johnny Valdez ¶¶ 6-8, ECF No. 38-8; Aff. of Tony Mace ¶¶ 6-8, ECF No. 38-9; Aff. of Hank Goke ¶¶ 6-8, ECF No. 38-10.

On May 30, 2011, at approximately 5:30 p.m., Plaintiff was stopped by an Arizona State Police Officer for alleged speeding, and after conducting a records check, the officer found the outstanding felony warrant out of New Mexico.  *See* Sheriff Defs.' Mem., Ex. C, ECF No. 38-3 at 1-5 of 8.  The officer arrested Plaintiff and booked him into the Yavapai County Detention Center at around 11:30 p.m.  *See id.*, Ex. C, ECF No. 38-3 at 6 of 8.  On May 30, 2011, Arizona

Detention Officer A. Braaten served the March 2, 2009 Warrant for Arrest on Plaintiff.  *See* Sheriff Defs.' Mem., Ex. B-3, ECF No. 38-2.

The next day, on May 31, 2011, Plaintiff attended a hearing on extradition in the Yavapai County Superior Court.  *See id.*, Ex. D, ECF No. 38-4.  The Court advised Plaintiff that there was a warrant issued for him out of New Mexico and he had the right to the issuance or service of a warrant of extradition, the right to contest extradition by habeas corpus, and the right to bail.  *See id.*, Ex. D, ECF No. 38-4.  Plaintiff signed the Waiver of Extradition, admitting that he was the identical person against whom charges had been instituted in Cibola County, agreeing to accompany to New Mexico any peace officer who would be sent to take him to New Mexico for trial, and acknowledging that he had been advised of his rights, including the "right to be admitted by the Court to bail or bond, such bail or bond to be conditioned for my appearance before the Court upon the extradition proceeding," and waiving those rights.  *See id.*, Ex. E, ECF Nos. 38-5.  The court then advised him the Sheriff's Department would contact the demanding state to have him transported.  *See id.*, Ex. D, ECF No. 38-4.

On June 1, 2011, the Yavapai County Sheriff's Office faxed a copy of the warrant and the signed Waiver of Extradition to the Cibola County Sheriff's Office.  *See id*., Ex. F, ECF No. 38-6.  A signed, but undated copy of the Return of Service for the Warrant for Arrest of Plaintiff was filed in the Thirteenth Judicial District Court on June 1, 2011.  *See id.*, Ex. B-2, ECF No. 38-2.[1]

In May and June 2011, Defendant Johnny Valdez was the Sheriff of Cibola County, New Mexico; Defendant Hank Goke was a Deputy and Transport Officer for the Cibola County Sheriff's Office ("CCSO"); and Tony Mace was the Undersheriff of the CCSO.  Aff. of Johnny

---

[1] Subsequently on June 28, 2011, a dated copy of the return of service was filed in the same court. *See* Sheriff Defs.' Mem., Ex. B-1, ECF No. 38-2.

Valdez ¶¶ 4-5, ECF No. 38-8.  At that time, Defendant Frank Salcido was the jail administrator who oversaw the operation of the Cibola County Detention Center ("CCDC").  Def. Salcido's Answer to Interrog. No. 2, ECF No. 33-1 at 2-3 of 3.

Ginger Vernon was the Records Clerk for the CCSO from August 2009 through February 2013, whose job duties included receiving and reviewing documents from law enforcement agencies requesting the transport of individuals to Cibola County from out of state.  Aff. of Ginger Vernon ¶¶ 4-5, 11, ECF No. 38-7.  Ms. Vernon's practice when she received a request for out-of-state transport was to contact the lead clerk with the Thirteenth Judicial District Attorney's Office in Grants, New Mexico, to confirm that the office wanted the individual returned to New Mexico.  *Id.* ¶ 6.  If she received such confirmation, Ms. Vernon would go to Sheriff Valdez for approval of the transport and ask whether he wanted the transportation conducted by the CCSO Transport Officer or a private contractor.  *Id.* ¶ 7.  If Sheriff Valdez approved the transport by the CCSO Transport Officer, Ms. Vernon's practice was to give the paperwork to Deputy Goke, or in his absence, to another deputy, and advise him where he was to go and what he was to do.  *Id.* ¶ 8.  She would then contact the agency holding the suspect and advise the agency of the date and time the CCSO deputy would arrive.  *Id.* ¶ 9.  Once the transport was complete, Ms. Vernon's practice was to send the completed Arrest/Booking Report for the arrestee transported under an arrest warrant to either the district court or the District Attorney's Office, depending on the instructions she received from those offices.  *See id.* ¶ 10. During her tenure as the Records Clerk, Ms. Vernon received different verbal instructions from the District Attorney's Office and the district court regarding which entity should receive the paperwork related to the completed transport.  *Id.* ¶ 11.  Nevertheless, Ms. Vernon sent the paperwork to one entity or the other within 48 hours of completion of the transport.  *Id.* ¶ 12.

Ms. Vernon has no specific recollection of the circumstances surrounding Plaintiff's transport. *Id.* ¶ 13.

Deputy Goke received a warrant to transport Mr. James, but he also has no specific recollection of that transport. *See* Dep. of Hank Goke 40, ECF No. 38-11.   On June 9, 2011, Deputy Goke transported Mr. James from Arizona to CCDC. *See id.*; Warrant for Arrest, ECF No. 33-3 at 1 of 2.  Mr. James spent approximately 10 days in the custody of the Yavapai County Detention Center.

At 2:00 p.m. on June 9, 2011, Deputy Goke filled out the Arrest/Booking Report for Eric James and signed as the "Arresting Officer."  Arrest/Booking Report, ECF No. 33-3 at 2 of 2; Dep. of Hank Goke 24, ECF No. 38-11.  Deputy Goke also signed the return for the Warrant for Arrest, stating that he arrested the defendant on June 9, 2011. *See* Warrant for Arrest, ECF No. 33-3 at 1 of 2.  To book someone into the CCDC, a deputy would prepare an Arrest/Booking Report form at the jail, get three copies of the form, and attach a copy of the warrant or the transport order to the other forms. *See* Dep. of Hank Goke 26-27, ECF No. 38-11.  Deputy Goke would then take a copy back to the records clerk at the CCSO, give a copy to the jail, and a copy to the arrestee. *See id.*

At the time Mr. James was booked into the CCDC, the practice of the CCDC was that the booking officer who booked a detainee on the basis of a warrant issued by the district court, and/or the agency for who he worked, had the responsibility to deliver the booking paperwork to the district court. *See* Def. Salcido's Answer to Interrog. No. 4., ECF No. 33-2 at 2-3 of 3.  Mr. James asked the booking officer when he could get a court date, and the booking officer said they had court the next morning.  Decl. of Eric James ¶ 7, ECF No. 44-8.  On June 10, 2011, a copy of the Warrant for Arrest of Eric James and the Arrest Booking Report were filed in the

Thirteenth Judicial District Court.  *See* Warrant for Arrest, ECF No. 33-3 at 1 of 2.  Mr. James, however, was not taken to court that day; and for the first two or three days, he continued to ask the employees at the detention center when he would get his court date.  Decl. of Eric James ¶ 8, ECF No. 44-8.  During his detention at the Cibola County Detention Center, Mr. James attempted to file a couple of grievances, but they were denied or he received no answer.  *Id.* ¶ 10. He was told that there was no way to file a grievance about being in jail too long without a court date.  *Id.*

On June 14, 2011, counsel for Mr. James filed in the Thirteenth Judicial District Court a Motion to Release Mr. James from the CCDC and a Request for Hearing.  *See* Mot. to Release, ECF No. 33-4; Request for Hearing, ECF No. 33-5.  As grounds for the motion, counsel stated that Mr. James had been incarcerated since June 9, 2011, at the CCDC without an arraignment or other hearing before a New Mexico district or magistrate court in violation of his Fourteenth Amendment procedural due process rights, and that the District Attorney's Office had not filed a criminal complaint or criminal information against Mr. James.  *See* Mot. to Release, ECF No. 33-4 at 1 of 2.

On June 15, 2011, the District Attorney's Office filed a Motion to Remand to Magistrate Court, requesting that Mr. James be remanded to Magistrate Court for a first appearance and preliminary examination.  *See* Mot. to Remand, ECF No. 33-6.  That same day, counsel for Mr. James filed with the Thirteenth Judicial District Court a Petition for Writ of Habeas Corpus seeking the issuance of a writ commanding that Sheriff Valdez and the Warden of the CCDC release Mr. James.  *See* Petition, ECF No. 33-7.  On June 20, 2011, the district court set a hearing on the motion for release for June 22, 2011.  *See* Request for Hearing, ECF No. 33-8.  On June 22, 2011, the district court entered an order releasing Defendant from custody.  See Order, ECF

No. 33-9.  Later that day at 1:40 p.m., after approximately 13 days in the custody of the CCDC, Mr. James was released from the CCDC.  *See* Aff. of Frank Salcido ¶ 5, ECF No. 33-10.

Sheriff Valdez never asserted control over the CCDC or promulgated, created, or enforced any custom, practice, or policy of the CCDC.  *See* Dep. of Johnny Valdez ¶¶ 12-13, ECF No. 38-8.  As Jail Administrator, Mr. Salcido oversaw the execution of the policies and procedures whereby CCDC employees booked detainees into the jail and transported detainees to the courts when ordered to do so by the courts.  Def. Salcido's Answer to Interrog. No. 4, ECF Nos. 33-2 at 3 of 3.  Although the practice of the CCDC was to place on the booking officer the duty for delivering the booking paperwork to the district court, as a courtesy, every Tuesday through Friday morning, the CCDC faxed a printout of every individual booked into the CCDC for a 24-hour period to the district, magistrate, and municipal courts.  *Id.*  On Monday, as a courtesy, a printout of every individual booked into the CCDC since the preceding Friday was faxed to the district, magistrate, and municipal courts.  *Id.*  Detainees were transported to the court pursuant to a Transport Order provided to the CCDC by the court ordering the transport. *Id.*

## II.    PROCEDURAL BACKGROUND

On May 6, 2013, Mr. James filed suit against Sheriff Valdez, Undersheriff Mace, Deputy Goke, and Mr. Salcido arising out of this incident.  Compl., ECF No. 1.  Mr. James asserts the following claims under 42 U.S.C. § 1983 against the individual defendants in his amended complaint:  violation of his Fourteenth Amendment right to substantive and procedural due process (Count I); violation of his Fourth Amendment right to be free from unreasonable seizures (Count II); and violation of his Eighth Amendment right to be free from excessive bail requirements (Count III).  *Id.* ¶¶ 32-47.  Mr. James also asserts state law claims against the

individual defendants for false imprisonment (Count IV); negligent operation of buildings, machinery, and equipment (Count V); and negligent failure to perform statutory duties (Count VI). *Id.* ¶¶ 48-59. Finally, Mr. James asserts a municipal liability claim under § 1983 against the official capacity defendants (Count VII). *Id.* ¶¶ 60-66.

The parties engaged in written discovery and scheduled some depositions. *See*, *e.g.,* Certificates of Service, ECF Nos. 17, 18, 23, 24, 28, and 29. On January 10, 2014, Defendant Salcido filed a motion to stay discovery based on the protections afforded by the qualified immunity doctrine. *See* Def. Salcido's Mot. to Stay 1, ECF No. 31. Four days later, Defendant Salcido filed a motion for summary judgment on all counts, based in part on the doctrine of qualified immunity. Def. Salcido's Mot. for Summ. J., ECF No. 33. On February 10, 2014, the Sheriff Defendants filed their motion for summary judgment based also in part on qualified immunity. Sheriff Defs.' Mot. for Summ. J., ECF No. 37. Instead of filing a response to the motions for summary judgment, Plaintiff filed a Rule 56(d) Motion to Deny, Defer Ruling on, or Extend Time to Respond to Defendants' Motions for Summary Judgment. Pl.'s Rule 56(d) Mot., ECF No. 44.

On March 26, 2014, the Honorable Gregory B. Wormuth entered an Order broadly staying discovery pending the Court's disposition of the motions for summary judgment and/or the Rule 56(d) motion, subject to any exceptions laid out in any ruling on the Rule 56(d) motion. Order Staying Discovery 6, ECF No. 53. On April 16, 2014, this Court overruled Plaintiff's objections to Judge Wormuth's Order staying discovery, explaining that this Court should determine if the discovery sought under Rule 56(d) is essential to the resolution of the motions for summary judgment. *See* Order 2, ECF No. 58. The Court will now consider both the Rule 56(d) motion along with the motions for summary judgment.

### III.    STANDARD

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When a defendant raises the qualified immunity defense on summary judgment, the burden shifts to the plaintiff, who must meet a strict two-part test of showing that: (1) the defendant violated a constitutional or statutory right and (2) the right was clearly established at the time of the conduct. *See Nelson v. McMullen*, 207 F.3d 1202, 1206 (10th Cir. 2000). As to the first inquiry, the question is whether the facts alleged, which are taken in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional or statutory right. *See Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002).

The second inquiry is more specific than whether the officer's conduct violated a constitutional or statutory right; the question is whether it would be clear to a reasonable officer that his conduct was unlawful under the circumstances he confronted. *Saucier v. Katz*, 533 U.S. 194, 202 (2001). "[T]he right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established." *Wilson v. Layne*, 526 U.S. 603, 615 (1999) (citing *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)). Moreover, "in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Morris v. Noe*, 672 F.3d 1185, 1196 (10th Cir. 2012) (quoting *Klen v. City of Loveland, Colo.*, 661 F.3d 498, 511 (10th Cir. 2011)). The essence of the second prong is whether the state of the law at the time of the incident gave the defendants "fair

warning" that their alleged conduct was unconstitutional.  *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014).  "Even when the plaintiff pleads a violation of a clearly established right, the court must sometimes consider 'whether extraordinary circumstances—such as reliance on the advice of counsel or on a statute—so prevented the official from knowing that his or her actions were unconstitutional that he or she should not be imputed with knowledge of a clearly established right.'"  *Wilson v. Montano*, 715 F.3d 847, 852 (10th Cir. 2013) (quoting *Shero v. City of Grove*, 510 F.3d 1196, 1204 (10th Cir.2007)).

If the plaintiff establishes both elements of the qualified immunity test, then the burden shifts back to the defendant to show there are no genuine issues of material fact and that he is entitled to judgment as a matter of law.  *See Tolan*, 134 S.Ct. at 1866; *Nelson*, 207 F.3d at 1206. Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir. 1995) (quoting Fed. R. Civ. P. 56(c)).  The court must view all facts and reasonable inferences in the light most favorable to the nonmoving party.  *Tolan*, 134 S.Ct. at 1866.

The qualified immunity defense protects against the burdens of discovery as well as trial. *See Siegert v. Gilley*, 500 U.S. 226, 231-33 (1991); *Harlow*, 457 U.S. at 818-19 (1982) ("Until this threshold immunity question is resolved, discovery should not be allowed.").  Where a court has entered a broad discovery stay after a defendant has raised the qualified immunity defense, as here, Federal Rule of Civil Procedure 56(d) provides a mechanism to protect qualified immunity by preventing "broad-reaching" discovery, but permitting limited discovery that may be necessary when the doctrine is asserted in a motion for summary judgment on contested factual

assertions.  *See Crawford-El v. Britton*, 523 U.S. 574, 600 & n.20 (1998).  The generally liberal Rule 56(d) standard is more limited in the context of a summary judgment motion based on qualified immunity because insubstantial lawsuits against government officials should be resolved prior to discovery, if possible.  *Lewis v. City of Ft. Collins*, 903 F.2d 752, 758 (10th Cir. 1990) (quoting *Jones v. City and County of Denver*, 854 F.2d 1206, 1211 (10th Cir. 1988)).

Rule 56(d) permits a non-moving party to identify "facts essential to justify its opposition" to a summary judgment motion that the party cannot yet present.  Fed. R. Civ. P. 56(d).  In order to satisfy requirements of Rule 56(d), Plaintiff's affidavit must do more than simply indicate that he would like to engage in discovery; rather, the Rule 56(d) affidavit must specifically explain (1) what probable facts the plaintiff can find through further discovery, (2) what steps the party has taken to obtain the discovery, (3) how that discovery will assist in overcoming defendant's *prima facie* showing of entitlement to summary judgment, and (4) how additional time will enable the party to rebut the movant's allegations of no genuine issue of material fact. *See Trask v. Franco*, 446 F.3d 1036, 1042 (10th Cir. 2006); *Valley Forge Ins. Co. v. Health Care Mgmt. Partners, Ltd.*, 616 F.3d 1086, 1096 (10th Cir. 2010); *Libertarian Party of NM v. Herrera*, 506 F.3d 1303, 1308-09 (10th Cir. 2007) (quoting *Ben Ezra, Weinstein & Co. v. Am. Online, Inc.*, 206 F.3d 980, 987 (10th Cir. 2000)).  *See also Committee for First Amendment v. Campbell*, 962 F.2d 1517, 1523 n.7 (10th Cir. 1992).  In addition, where the defendant has raised qualified immunity as a defense, the non-moving party must also show "'*how* discovery will enable them to rebut a defendant's showing of objective reasonableness' or, stated alternatively, demonstrate 'a connection between the information he would seek in discovery and the validity of the [defendant's] qualified immunity assertion.'"  *Lewis*, 903 F.2d at 758 (quoting *Jones*, 854 F.2d at 1211).  If a party makes the necessary showing, the Court may defer

11

considering the motion, deny it, allow additional time for "essential" discovery to occur, or issue any other appropriate order.  *See* Fed. R. Civ. P. 56(d).

## IV.   ANALYSIS

### A.   Whether the Individual Defendants are entitled to Qualified Immunity under Section 1983

The general right of an accused to liberty pending trial finds protections in the Fourth Amendment, the Due Process Clause of the Fourteenth Amendment, and the Eighth Amendment. *See*, *e.g.*, *County of Riverside v. McLaughlin*, 500 U.S. 44, 47 (1991) ("[T]he Fourth Amendment requires a prompt judicial determination of probable cause as a prerequisite to an extended pretrial detention following a warrantless arrest."); *Bell v. Wolfish*, 441 U.S. 520, 535 (1979) ("In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee. For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law."); *Dodds v. Richardson*, 614 F.3d 1185, 1192 (10th Cir. 2010) ("[T]he right of an accused to freedom pending trial is inherent in the concept of a liberty interest protected by the due process clause of the Fourteenth Amendment."); *Meechaicum v. Fountain*, 696 F.2d 790, 791 (10th Cir. 1983)) ("Because the practical effect of excessive bail is the denial of bail, logic compels the conclusion that the harm the Eighth Amendment aims to prevent is the unnecessary deprivation of pretrial liberty.").  Plaintiff has asserted that his pre-trial detention without access to the courts, including a first appearance or bail hearing, amounts to a constitutional deprivation under each of these amendments.

### 1.   Fourth Amendment (Count II)

The Fourth Amendment requires a prompt judicial determination of probable cause as a

condition for any significant pretrial detention following a warrantless arrest, although an adversary hearing is not required. *Baker v. McCollan*, 443 U.S. 137, 142-43 (1979). Generally, if the judicial determination of probable cause occurs within 48 hours following a warrantless arrest, the promptness requirement is satisfied. *See McLaughlin*, 500 U.S. at 56. This 48-hour presumption permits jurisdictions to combine these probable-cause determinations with other proceedings that arise very early in the pretrial process, like bail hearings and arraignments. *See id.* at 58.

In contrast, "a person arrested pursuant to a warrant issued by a magistrate on a showing of probable-cause is not constitutionally entitled to a separate judicial determination that there is probable cause to detain him pending trial," because "the probable cause standard for pretrial detention is the same as that for arrest." *Baker*, 443 U.S. at 143. Consequently, absent an attack on the validity of the warrant, an accused deprived of liberty for a period of days pursuant to a valid warrant does not have a § 1983 claim based on the Fourth Amendment. *See id.* at 143-44.

Plaintiff alleges in Count II that the individual Defendants, with knowing and reckless disregard for the truth, caused the omission and non-disclosure of material information negating probable cause for the execution of a nationwide "no bond" warrant, causing Plaintiff to be detained on the basis of a "stale warrant" unaccompanied by a criminal complaint. Defendants have each filed affidavits averring that they had no participation in preparing the warrant and no information specific to the offense that would negate probable cause. Plaintiff has not shown that discovery would likely lead to relevant evidence to refute this evidence. Plaintiff thus cannot overcome Defendants' qualified immunity defense on the Fourth Amendment claim because Defendants have shown they had no reason to believe the warrant was lacking in probable cause. Nor does the doctrine of "staleness" apply here on an arrest warrant for a

completed crime. *See State v. Powell*, 1981-NMCA-090, ¶8, 96 N.M. 569 ("The State confuses issuance of an arrest warrant for crimes committed in the past with the prohibition against issuing a search warrant on stale information. The former interacts with statutes of limitations, whereas the latter requires a showing of probable cause that the contraband be presently possessed by the suspect.").

As for Plaintiff's contention that Defendants should have known that Plaintiff had a right to a prompt appearance before a court, regardless of the "no bond" clause on the warrant, the Court finds that argument to raise issues under the Due Process Clause, not the Fourth Amendment. *See Gaylor v. Does*, 105 F.3d 572, 574-75 (10th Cir. 1997) (explaining that, where arrest is made on probable cause warrant and after judicial determination of probable cause, due process, not Fourth Amendment, regulates period of confinement after initial determination of probable cause). Plaintiff has thus not shown that Defendants violated his Fourth Amendment rights and the Court will grant summary judgment to Defendants on Count II.

### 2.    Fourteenth Amendment Due Process

Under New Mexico law, "the defendant named in the warrant shall, upon arrest, be brought by the officer before the court *without unnecessary delay*." N.M. Stat. Ann. § 31-1-4(C) (emphasis added). *See also* N.M. Stat. Ann. § 31-1-5 ("Every accused shall be brought before a court having jurisdiction to release the accused without unnecessary delay."). At the first appearance of a defendant before a court, the court must inform the defendant of the charge against him and of his rights, including the right to bail, trial by jury, assistance of counsel, and the right to remain silent. *See* NMRA 5-301(D); N.M. Stat. Ann. § 31-1-3 ("A criminal prosecution shall be commenced, conducted and terminated in accordance with Rules of Criminal Procedure.").

Under Article II, Section 13 of the New Mexico Constitution, every accused is "entitled to be released from custody pending trial without being required to post excessive bail, subject to limited exceptions in which release may be denied in certain capital cases and for narrow categories of repeat offenders." *State v. Brown*, 2014-NMSC-038, ¶ 1, 338 P.3d 1276.  New Mexico rules of criminal procedure establish a presumption of release from custody "on the least restrictive conditions necessary to reasonably assure both the defendant's appearance in court and the safety of the community." *Id.* ¶¶ 1, 37 (citing NMRA 5-401).  Where "the defendant is accused of a felony and has previously been convicted of two or more felonies, within the state" or "the defendant is accused of a felony involving the use of a deadly weapon and has a prior felony conviction, within the state," "[b]ail may be denied by the district court for a period of sixty days after the incarceration of the defendant by an order entered within seven days after the incarceration."  N.M. Const. art II, § 13.  This provision allows for judicial discretion and creates a rebuttable presumption.  *State v. David*, 1984-NMCA-119, ¶ 22, 692 P.2d 524.  A court must first provide an accused "with adequate procedural due process protections, including the right to counsel, notice, and an opportunity to be heard," before refusing bail under one of the exceptions.  *Brown*, 2014-NMSC-038, ¶ 20.

Defendant Salcido argues that, even if he failed to comply with these state statutes, Plaintiff has not shown that the violation of state law amounts to interference with his federal constitutional rights to meaningful access to the courts or to freedom from unlawful detention and excessive bail.  Whether a detention exceeding the time provided in state law to bring an accused before a judge for a first appearance or bail hearing amounts to a violation of due process depends in part on the duration of the detention.  *See Baker*, 443 U.S. at 144-46 (indicating that detention pursuant to valid warrant may, after lapse of time, deprive accused of

15

his rights to a speedy trial or due process).  Defendants contend that the length of detention in this case does not amount to a constitutional injury, or alternatively, that it was not clearly established that the length of incarceration amounted to a constitutional violation.  The Court will thus first turn to whether the length of pre-trial detention in this case violated Plaintiff's clearly established due process rights.

**a.    Liberty interest in prompt first appearance and bail hearing**

The Due Process Clause of the Fourteenth Amendment provides that no State may "deprive any person of life, liberty, or property, without due process of law...."  The Due Process Clause protects individuals against two types of governmental action:  (1) "substantive due process" prevents the government from engaging in action that "shocks the conscience" or "interferes with rights implicit in the concept of ordered liberty," and (2) "procedural" due process ensures that government action is implemented in a fair manner.  *See United States v. Salerno*, 481 U.S. 739, 746 (1987) (internal quotations omitted) (discussing Fifth Amendment Due Process Clause).

In *Baker v. McCollan*, despite his protests of mistaken identity, an accused was arrested and detained pursuant to a valid warrant for three days, until authorities determined the wrong man had been jailed.  *See Baker*, 443 U.S. at 142-44.  Although the Supreme Court recognized that the accused might have a tort claim, it rejected his § 1983 claims.  *See id.* at 140, 142.  The Supreme Court explained:

> Respondent was indeed deprived of his liberty for a period of days, but it was pursuant to a warrant conforming, for purposes of our decision, to the requirements of the Fourth Amendment. *Obviously, one in respondent's position could not be detained indefinitely in the face of repeated protests of innocence even though the warrant under which he was arrested and detained met the standards of the Fourth Amendment.* For the Constitution likewise guarantees an accused the right to a speedy trial, and invocation of the speedy trial right need not await indictment or other formal charge; arrest pursuant to probable cause is

16

itself sufficient. *We may even assume,* arguendo*, that, depending on what procedures the State affords defendants following arrest and prior to actual trial, mere detention pursuant to a valid warrant but in the face of repeated protests of innocence will after the lapse of a certain amount of time deprive the accused of "liberty . . . without due process of law."* But we are quite certain that a detention of three days over a New Year's weekend does not and could not amount to such a deprivation.

…

The Fourteenth Amendment does not protect against all deprivations of liberty. It protects only against deprivations of liberty accomplished "without due process of law." A reasonable division of functions between law enforcement officers, committing magistrates, and judicial officers—all of whom may be potential defendants in a § 1983 action—is entirely consistent with "due process of law." Given the requirements that arrest be made only on probable cause and that one detained be accorded a speedy trial, we do not think a sheriff executing an arrest warrant is required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent. Nor is the official charged with maintaining custody of the accused named in the warrant required by the Constitution to perform an error-free investigation of such a claim. The ultimate determination of such claims of innocence is placed in the hands of the judge and the jury.

*Id.* at 144-46 (internal citations and footnote omitted, emphasis added).

Consequently, a three-day detention pursuant to a valid warrant over a holiday weekend does not amount to a constitutional deprivation, but dicta in the case suggests that lengthier detentions may trigger the protections of the due process clause. *See id.* *Baker*, however, was silent as to the test to employ to determine whether a greater length of pre-trial detention would violate due process. Nor did *Baker* precisely define the time limit on the justifiable length of detention prior to having access to the courts for a first appearance or bail hearing.

Subsequently, three courts of appeals have found a violation of a pretrial detainee's right to a prompt appearance in court, after arrest by warrant, under the due process clause; however, the circuits split as to the proper analysis: the Seventh and Eighth Circuits relied on the substantive component of the due process clause, while the Ninth Circuit grounded its decision

on procedural due process. *See Hayes v. Faulkner County*, 388 F.3d 669, 672-73 (8th Cir. 2004) (holding that 38-day pre-appearance detention violated the accused's substantive due process rights); *Oviatt v. Pearce*, 954 F.2d 1470, 1473-77 (9th Cir. 1992) (114 day detention without arraignment, bail hearing, or trial violated detainee's procedural due process rights); *Coleman v. Frantz*, 754 F.2d 719, 723 (7th Cir. 1985) ("We hold that the plaintiff's eighteen-day detention without an appearance before a judge or magistrate was a deprivation of liberty without due process of law."), *abrogated on other grounds by Benson v. Allphin*, 786 F.2d 268, 279 n.26 (7th Cir. 1986).

In *Coleman v. Frantz*, the Seventh Circuit reasoned that, where a state provides for first appearances, the requirement that they be timely places a relatively small burden on law enforcement and judicial officers, and thus, an 18-day detention without a first appearance, violated the accused's due process rights. *See Coleman*, 754 F.2d at 724. The Seventh Circuit determined that the elements of a first appearance under federal and state law give meaning to constitutional rights, in particular, the Sixth Amendment rights to be informed of the charges and of the right to counsel, the Fifth Amendment right to remain silent, and the Eighth Amendment right to set or review bail. *See id.* Consequently, the "protracted incarceration of Mr. Coleman with its incident harms is constitutionally impermissible because it is wholly inconsistent with notions of fundamental fairness required of criminal prosecutions under the Due Process Clause and with the concept of ordered liberty." *Id.* at 723 (internal quotations and citations omitted).

The Ninth Circuit in *Oviatt v. Pearce* considered whether the sheriff and county violated the detainee's constitutional rights where he was arrested on a bench warrant, the court clerk failed to place his name on the docket, and he spent 114 days in jail without an arraignment, a bail hearing, or trial. *See Oviatt v. Pearce*, 954 F.2d at 1473. The Ninth Circuit found a

protected liberty in freedom from incarceration, relying on *Baker* and two state statutes, one mandating speedy trial within 60 days or release from custody, and the other mandating arraignment within 36 hours of custody.  *See id.* at 1474-75.  Employing the *Mathews v. Eldridge*[2] balancing test, the Ninth Circuit concluded that the county's minimalist approach to jail procedure, in which the only check on clerical errors was protestation by the prisoner, his family, or his lawyer, failed to provide due process in contravention of the Fourteenth Amendment.  *See id.* at 1475-77.

In *Armstrong v. Squadrito*, the Seventh Circuit, relying on *Coleman*, held that, where the sheriff's office misfiling of the detainee's records resulted in a 57-day detention following arrest on a "body attachment warrant" without an initial appearance, the individual guards' refusal to accept complaint forms from the detainee shocked the conscience, and thus, the Seventh Circuit denied qualified immunity to the individual guards on the detainee's substantive due process claims.  *See Armstrong v. Squadrito*, 152 F.3d 564, 567, 579-82 (7th Cir. 1998).[3]  In analyzing whether the plaintiff's § 1983 substantive due process claim survived summary judgment, the Seventh Circuit examined three questions:  (1) whether the Due Process Clause protects against an extended detention, without an appearance before a magistrate, following an arrest pursuant to valid bodily attachment; (2) whether defendants' conduct offended the standards of substantive due process; and (3) whether the totality of the circumstances shocks the conscience.  *Id.* at 570.  The first question is one of law, in which a court should look at precedent, long-standing state

---

[2] 424 U.S. 319, 335 (1976).
[3] The Seventh Circuit rejected the Ninth Circuit's procedural due process approach, noting that procedural requirements accorded by state statutes and courts do not create a substitutive due process right under the Fourteenth Amendment.  *See Armstrong*, 152 F.3d at 575 & n.4.  The Seventh Circuit nevertheless considered state procedures to determine whether the lack of prompt appearance offended federal due process.  *See id. at* 575.  The *Armstrong* court explained that the procedural requirements related to a writ of attachment for contempt are extensive and intimately concerned with traditional due process concepts such as notice and opportunity to be heard, the right to offer bail, and the right to defend himself, comparing these provisions to Coleman where the Seventh Circuit found a connection between a first appearance and the criminal provisions of the Bill of Rights.  *See id.*

and federal statutes, and specific textual rights.  *See id.* at 571.  The second question is one of fact, and the Seventh Circuit determined that the standard for a substantive due process claim in the detention context is deliberate indifference.  *See id.* at 576-77.  The third question is one of law, and the Seventh Circuit examined the facts of the case against the precedent set in *Coleman* in attempting to resolve the issue objectively.  *See id.* at 581.  After resolving all three questions affirmatively, the Seventh Circuit concluded that, since *Coleman*, the law had been clearly established "that the Fourteenth Amendment guards against a prolonged detention, without a prompt appearance, following an arrest pursuant to a warrant."  *Id.* at 582.

In 2004, the Eighth Circuit affirmed the district court's ruling that the accused's 38-day pre-appearance detention violated his right to substantive due process and affirmed the judgment against the county and individually against the jail administrator.  *See Hayes*, 388 F.3d at 672. The Eighth Circuit followed *Armstrong*'s three-prong totality-of-the-circumstances test for determining if the extended detention without a first appearance violated substantive due process.  *See id.* at 673.  The Eighth Circuit concluded that the County's policy, in which it submitted arrestee names to the court and waited for the court to schedule a hearing, was deliberately indifferent to detainees' due process rights where it delegated the responsibility of bringing detainees to court and ignored whether the jail had the authority to submit detainees for long-term confinement.  *See id.* at 674.  It also held the jailer liable because he helped promulgate and enforce the policy, and made a conscious decision to do nothing as to the plaintiff's specific grievance.  *Id.*  After examining state law that mandated a prompt first appearance in court, which the 38-day detention violated, the Eighth Circuit concluded the defendants' conduct shocked the conscience.  *See id.* at 675.

The Tenth Circuit has not directly addressed the issue of what length of pretrial detention

without a first appearance or bail hearing, if any, violates due process.  The Tenth Circuit, however, has clearly stated, in the context of the right to bail for criminal offenses bailable under state law, "the right of an accused to freedom pending trial is inherent in the concept of a liberty interest protected by the due process clause of the Fourteenth Amendment."  *Meechaicum v. Fountain*, 696 F.2d 790, 791-92 (10th Cir. 1983) (holding that, where petitioner was being held for state crimes that were indisputably bailable offenses, he is constitutionally entitled to be considered for bail under state law).

The Tenth Circuit has also set forth the due process analysis where pretrial detention is prolonged unduly after bail has been set.  *See Gaylor*, 105 F.3d at 576.  In *Gaylor*, the plaintiff was arrested pursuant to a probable cause arrest warrant issued by a judge, the next day a magistrate set bail at $1,000 that was thereupon entered into the jail's computer records, but despite the plaintiff's and his roommates attempts to determine from the jail the bail amount in order to post the bail, the plaintiff was not released until four days after bail had been set when he was brought before another magistrate who reduced his bail.  *See id.* at 573-74.  The Tenth Circuit stated that the question whether the plaintiff made a sufficient claim that his constitutional rights were violated under the Due Process Clause by keeping him in jail for the five-day period without a hearing before a magistrate and by not informing him about his bail status turns on the due process precedents of *Bell v. Wolfish*, 441 U.S. 520 (1979), and *United States v. Salerno*, 481 U.S. 739 (1987).  *See Gaylor*, 105 F.3d at 574, 576.

The Tenth Circuit quoted *Bell v. Wolfish*:

> In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee. ...
>
>     ....

> A court must decide whether the disability is imposed for the
> purpose of punishment or whether it is but an incident of some
> other legitimate governmental purpose.... Thus, if a particular
> condition or restriction of pretrial detention is reasonably related to
> a legitimate governmental objective, it does not, without more,
> amount to "punishment." Conversely, if a restriction or condition
> is not reasonably related to a legitimate goal—if it is arbitrary or
> purposeless—a court permissibly may infer that the purpose of the
> governmental action is punishment that may not constitutionally be
> inflicted upon detainees *qua* detainees.

*Id.* at 576 (quoting *Bell*, 441 U.S. at 535, 537, 538–39).  The Tenth Circuit then discussed how

the Supreme Court in *United States v. Salerno* set forth the need for punitive restrictions to be

rationally connected to a permissible purpose: "the punitive/regulatory distinction turns on

whether an alternative purpose to which [the restriction] may rationally be connected is

assignable for it, and whether it appears excessive in relation to the alternative purpose assigned

[to it]."  *Id.* (quoting *Salerno*, 481 U.S. at 739) (internal quotations omitted).

    In applying the analysis, the Tenth Circuit explained that Gaylor had a liberty interest in

being freed once the magistrate set his bond amount, because the "setting of bond in effect

accepted the security of the bond for Gaylor's appearance, and hence the state's justification for

detaining him faded."  *Id.*  It then considered "whether the policy in question 'punished' Gaylor

by infringing his liberty interest unreasonably and in a way unrelated to a legitimate goal, such as

insuring his appearance for trial or protecting others from him."  *Id.* at 576-77.  The Tenth

Circuit concluded that the official policy of the Denver jail to inform inmates of their bond

amount only if they asked served no legitimate goal, appeared arbitrary or purposeless under *Bell

v. Wolfish*, and could be found to be "punishment," not mere regulatory policy, and thus reversed

the summary judgment adverse to the plaintiff.  *See id.* at 577-78.

    The *Gaylor* and *Meechaicum* cases demonstrate that it is clearly established that pretrial

detainees have a liberty right to freedom pending trial, and that the denial of that right must be reasonably related to a legitimate goal.  This liberty right includes a right to be considered for bail where the charged offenses are bailable under state law.  *See Meechaicum*, 696 F.2d at 792 ("These Kansas crimes are indisputably bailable offenses . . . .  We conclude that so long as petitioner is being held by Kansas to face Kansas charges, he is entitled to be considered for bail under Kansas law.").  Indeed, the Tenth Circuit reaffirmed that "the denial of bail must comport with the requirements of due process," and that bail may not be denied without the application of a reasonably clear legal standard and a rational basis for the denial.  *Dodds*, 614 F.3d at 1192.

Under New Mexico law, the charges Plaintiff faced were bailable, and a denial of all bail was only permissible after a hearing and order entered by a court within seven days of incarceration.  *See* N.M. Const. art. II, § 13.  Notably, the 13-day detention in the CCDC is clearly greater than the seven-day substantive limitation established in Article II, Section 13 of the New Mexico Constitution for a determination before a court for a denial of bail.  New Mexico law also requires an officer to bring a defendant named in a warrant to court "without unnecessary delay."  N.M. Stat. Ann. § 31-1-4.  These statutes, like those in *Coleman*, give meaning to rights established by the United States Constitution, specifically, the right to be free of excessive bail, the right to be informed of the nature of the charges, the right to counsel, and the right to remain silent.  Consequently, despite the "No Bond" clause on the warrant, it was clearly established in light of the aforementioned law that Plaintiff had a liberty interest in a prompt appearance before the Court for a first appearance and bail determination.[4]  *Cf. Oviatt*,

---

[4] Plaintiff also alleges a due process violation based on his right to access to the courts.  Defendants concede that a pretrial detainee has a constitutional right to adequate, effective and meaningful access to courts to vindicate his fundamental constitutional rights.  *See Love v. Summit County*, 776 F.2d 908, 912 (10th Cir. 1985).  To succeed on a due process claim based on interference with access to the courts, a plaintiff must show actual injury, that the detainee was frustrated or impeded in his efforts to pursue a nonfrivolous legal claim concerning his conditions of confinement.  *See Gee v. Pacheco*, 627 F.3d 1178, 1191 (10th Cir. 2010).  Defendants argue that they are entitled to summary judgment because Plaintiff had access on an attorney who filed motions on his behalf within five days of

954 F.2d at 1474-75 (concluding that plaintiff had protected liberty interest in being free from incarceration without a prompt pretrial court appearance in part on state law in which there was no discretion but for a court to hold an arraignment within first 36 hours of custody); *Coleman*, 754 F.2d at 724 ("Almost every element of a 'first appearance' under state statutes or the Federal Rules of Criminal Procedure serves to enforce or give meaning to important individual rights that are either expressly granted in the Constitution or are set forth in Supreme Court precedent."); *Jackson v. Hamm*, 78 F.Supp.2d 1233, 1241 (M.D.Ala.1999) (finding that pre-trial detainee has substantive due process right to initial appearance within reasonable time after arrest upon valid warrant).

Defendants nevertheless contend that Plaintiff waived any right he may have had to bond while detained in Arizona. Although Plaintiff had a court in appearance in Arizona, that appearance was limited to Plaintiff's rights to contest his extradition. He agreed to accompany an officer to New Mexico for trial and he waived his right to contest bail or bond, but that waiver only applied to "such bail or bond to be conditioned for my appearance before the court upon the extradition proceeding." *See* Waiver of Extradition, ECF No. 38-5. Plaintiff did not waive his rights to bail or bond arising from his custody in New Mexico on the New Mexico charges. *See Meechaicum*, 696 F.2d at 792 (noting that, under Uniform Criminal Extradition Act, "[d]enial of bail pending extradition is based on the presumption that the detainee will be promptly extradited and provided his legal right to bail in the demanding state").

his detention in New Mexico, and thus, he was not denied meaningful access to the courts. The cases on which Defendants rely, however, are readily distinguishable because they involved plaintiffs who based their meaningful access to the courts arguments on inadequate law libraries, inadequate access thereto, or insufficient time to work on their criminal cases. *See, e.g., Southerland v. County of Hudson*, 523 F. App'x 919, *921 (3d Cir. May 10, 2013); *Boles v. Newth*, 479 F. App'x 836, 840-41 (10th Cir. May 8, 2012). In contrast, the actual injury here was Plaintiff's continued detention without a first appearance or bail hearing. The evidence in Plaintiff's favor shows that jail employees failed to bring Plaintiff to court for a first appearance or bail hearing until June 22, 2011, even after Plaintiff's counsel filed motions for his release on June 14, 2011. Plaintiff's retention of counsel did not prevent his continued detention without a prompt court appearance for another eight days. The Court will not grant summary judgment to Defendants on the due process claim based on a lack of actual injury.

Defendants have largely focused on the time period in their qualified immunity defense, arguing that the length of time in which Plaintiff was denied a hearing before a court and consideration of bail was not clearly impermissible under the law.  Defendants argue that the out-of-circuit cases involve larger periods of detention (18 days, 38 days, 57 days, and 114 days) than Plaintiff's undisputed 13-day period of detention in the CCDC.  Where, however, a policy unreasonably infringes the liberty interest in being free from pretrial detention in a way unrelated to a legitimate goal, the Tenth Circuit has concluded that a pretrial detention of as few as five days may offend a detainee's due process rights.  *See Gaylor*, 105 F.3d at 577-78.  Given that Plaintiff had a liberty interest in a prompt court appearance, to avoid violating due process, Defendants' actions in not affecting that appearance must have reasonably related to a legitimate goal.  *See Dodds*, 614 F.3d at 1192.  Accordingly, Defendants are not entitled to the qualified immunity defense based merely on the length of the 13-day detention period.  *See also Fairley v. Luman*, 281 F.3d 913, 918 (9th Cir. 2002) (holding that plaintiff had liberty interest in being free from 12-day incarceration without any procedural safeguard in place to verify warrant was his in face of his repeated protests of innocence); *Patton v. Przybylski*, 822 F.2d 697, 700-01 (7th Cir. 1987) ("An innocent person was allowed to languish in jail for almost a week; and to arrest a person over his vigorous protest that he is the wrong man … and keep him in jail for this period without either investigating the case or bringing him before a magistrate raises serious constitutional questions, … under the due process clause if the arrest was proper and the complaint is that the arrested person, having been deprived of his liberty by being incarcerated, was denied due process.").

Instead, whether the 13-day period without a judicial review of bail or first appearance clearly violates due process depends on the policy of the Sheriff's department and the jail for

bringing detainees to court for such hearings, the reasons why Defendants did not bring Plaintiff to court more promptly, and whether those reasons are rationally related to legitimate goals, all information Plaintiff seeks in discovery. Plaintiff has submitted an affidavit setting forth what discovery he wishes to take, what steps he has taken to procure this discovery, and how the anticipated discovery will assist in overcoming Defendants' motion for summary judgment and qualified immunity defense. Specifically, Plaintiff seeks discovery on the aforementioned topics as well as who was the policymaker(s) for those policies and procedures; how Plaintiff's paperwork flowed through the organizational structure within each agency; what became of the booking paperwork when Defendant Goke purportedly gave it to the records clerk after booking Plaintiff into CCDC; what, if any, procedure the Sheriff's Defendants used to follow up on the status of any court appearance during Plaintiff's pretrial detention; and what CCDC's grievance procedure is and how it was applied in Plaintiff's case.

Moreover, although the 13-day period of detention is the appropriate period of detention to consider Plaintiff's claims against Defendant Salcido, as his involvement did not begin until Plaintiff was detained in the CCDC, the record shows an additional 8-day period in which the CCSD had notice of Plaintiff's extradition waiver before Defendant Goke transported him to New Mexico. Plaintiff requests discovery on why it took eight days for the Sheriff's Defendants to send a deputy to Arizona to take Plaintiff into custody. If the Sheriff Defendants' delay was not reasonably related to a legitimate goal, and instead was a policy with the sole purpose of punishment, the additional period of delay may also be factored into Plaintiff's due process claim.

Accordingly, the facts viewed in Plaintiff's favor, coupled with the information he seeks in discovery, could state a violation of his clearly established constitutional rights. That

conclusion alone, however, does not merit denying qualified immunity to each individual Defendant.  The Court must now determine whether Plaintiff can demonstrate that each named Defendant deprived Plaintiff of that right and that each may be held liable for the deprivation. *See Dodds*, 614 F.3d at 1193.

### b.        Personal Liability of Each Defendant

"Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation."  *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997).  Courts may consider state law to the extent that it bears on the scope of each defendant's responsibility to ensure the plaintiff's rights were not violated.  *See Wilson*, 715 F.3d at 853-54 (noting that, before a defendant may be held liable under § 1983, that defendant must first possess power by virtue of state law in order to then misuse that power in a way that violates federal constitutional or statutory rights).

### 1)        Non-Supervisory Defendant Goke

Defendant Goke argues that he cannot be liable for any violation of Plaintiff's right to a prompt first appearance or bail hearing, because he was merely the transport officer, not the arresting officer.  New Mexico law places the duty to bring a defendant named in a warrant, upon arrest, to the court without unnecessary delay on the law enforcement officer directed in the warrant to execute the warrant.  *See* N.M. Stat. Ann. § 31-1-4.  Plaintiff's arrest warrant was directed "to any officer authorized to execute this warrant."  Warrant for Arrest, ECF No. 33-3 at 1 of 2.  It is undisputed that an Arizona officer initially arrested Plaintiff on the warrant, and that afterwards, on June 9, 2011, Defendant Goke transported Plaintiff from Arizona to the CCDC. Defendant Goke, however, did not merely transport Plaintiff, he also filled out and signed the Arrest/Booking Report for Plaintiff and signed Plaintiff's Warrant for Arrest as the officer

27

arresting Plaintiff and executing the warrant.  Consequently, the Court rejects Defendant Goke's argument that he cannot be held liable as a matter of law because he was not an arresting officer. *Cf. Wilson*, 715 F.3d at 855 (affirming denial of qualified immunity to arresting officer because New Mexico law clearly placed duty to ensure arrestee receives prompt probable cause determination on arresting officer).  Defendant Goke is thus not entitled to qualified immunity at this time.

### 2) Supervisory Defendants (Valdez, Mace, Salcido)

In the Tenth Circuit, a plaintiff may establish the individual liability of a supervisor under § 1983 by demonstrating: "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Dodds*, 614 F.3d at 1199.  The Tenth Circuit further clarified that "defendant supervisors may be liable under § 1983 where an 'affirmative' link exists between the unconstitutional acts by their subordinates and their 'adoption of any plan or policy . . . – express or otherwise – showing their authorization or approval of such misconduct.'" *Id.* at 1200-01 (quoting *Rizzo v. Goode*, 423 U.S. 362, 371 (1976)).  For substantive due process claims, the state-of-mind requirement is that of deliberate indifference.  *See Hayes*, 388 F.3d at 674 (applying deliberate indifference standard); *Armstrong*, 152 F.3d at 576-77 (same).  *See also Wilson*, 715 F.3d at 858 (applying deliberate indifference analysis to § 1983 due process claim, but noting appellants had not challenged district court's application of that standard); *Dodds*, 614 F.3d at 1205 ("We do not pass judgment at this time on the state of mind required to establish a substantive due process violation based upon preventing an arrestee from posting preset bail. We assume, without deciding, deliberate indifference constitutes the required state of mind.").

a)      **Defendants Valdez and Mace**

New Mexico law places duties on the Sheriff to ensure an accused is brought to court without unnecessary delay, following an arrest on a warrant.  *See*, *e.g.*, N.M. Stat. Ann. § 4-41-2 ("The sheriff shall be conservator of the peace within his county" and shall "cause all offenders … to appear at the next term of the court and answer such charges as may be preferred against them."); *id.* § 31-1-5(B) ("Every accused shall be brought before a court having jurisdiction to release the accused without unnecessary delay."); id. § 31-1-5(C) ("Within eighteen hours after the arrest of any person accused with having committed a misdemeanor or a felony, the arresting law enforcement agency shall notify the district attorney of: (1) the name of the accused; and (2) the offense charged."); id. § 29-1-1 (stating it the duty of every sheriff and deputy sheriff "to diligently file a complaint or information, if the circumstances are such as to indicate to a reasonably prudent person that such action should be taken"); id. §33-3-1 ("The common jails shall be under the control of the respective sheriffs…."). *Cf. Wilson*, 715 F.3d at 856-57 (setting forth New Mexico law on respective duties of wardens and sheriffs in ensuring detainees receive prompt probable cause determination).

Defendant Valdez contends he did not have any control over the CCDC, and thus, as a matter of law cannot be held liable for any of the CCDC policies.  Although Defendant Valdez may not have asserted control over the jail, New Mexico state law placed duties on sheriffs to control the jail.  Consequently, under New Mexico law, Sheriff Valdez may be held responsible for the policies or customs that operated and were enforced by subordinates at both the CCSD and CCDC.  *See Wilson*, 715 F.3d at 857; *Dodds*, 614 F.3d at 1203-04 (holding that sheriff who was, by state law, responsible for policies that operated and were enforced by his subordinates at the jail who caused Plaintiff's constitutional injury, could be held personally liable for

unconstitutional policy that prevented individuals charged with a felony from posting a preset bond after hours).

Plaintiff's claims against Undersheriff Mace are based on his supervisory authority over Defendant Goke and Ginger Vernon. *See* Am. Compl. § 4, 18. In discovery, Defendant Valdez stated that he had no recollection of directing, dispatching, or approving the dispatch of Deputy Goke to Arizona to transport Plaintiff to CCDC, but that per standard operating procedure, the transfer paperwork would have come in through Ms. Vernon, Sheriff Valdez, or Undersheriff Mace, and either Sheriff Valdez or Undersheriff Mace would have authorized the transport. *See* Answer to Interrogatory No. 3, ECF No. 44-5 at 7 of 18. Plaintiff seeks discovery on whether Undersheriff Mace had a direct role in his transport and whether Sheriff Valdez delegated policymaking authority to Undersheriff Mace.

As discussed above, whether Plaintiff suffered violation of a clearly established right depends on the policy of the Sheriff's department for bringing detainees to court for first appearance and bond hearings, who established the policies within the Sheriff's Department, the reasons why Defendants did not bring Plaintiff to court more promptly, and whether those reasons are rationally related to legitimate goals. Plaintiff seeks this information, as well as on how Plaintiff's paperwork went through the system and whether Defendants had notice of prior incidents in which pretrial detainees arrested on a warrant were held for days without a court appearance. All this information bears upon whether Sheriff Valdez and/or Undersheriff Mace directly authorized Deputy Goke's actions in this case and/or promulgated policies that caused Plaintiff's prolonged detention without a prompt court appearance, and whether they acted with deliberate indifference. Plaintiff is therefore entitled under Rule 56(d) to proceed with discovery on these issues before the Court determines as a matter of law whether Plaintiff can establish that

Defendants Valdez and Mace violated Plaintiff's clearly established right to a prompt first appearance and bail determination.

**b)**      **Defendant Salcido**

New Mexico law also places duties on the jail administrator to control the jail and promulgate policies regarding the custody of the detainees in the jail.  See, e.g., N.M. Stat. Ann. § 33-2-15 ("The employees of the penitentiary shall perform such duties in the charge and oversight of the penitentiary, care of the property belonging thereto, and in the custody, government, employment and discipline of the convicts as shall be required of them by the corrections division [corrections department] or the warden, in conformity with law and rules and regulations prescribed for the government of the penitentiary."); *id.* §33-3-1 ("The common jails shall be under the control of the respective … jail administrators …."). *Cf. Wilson*, 715 F.3d at 857 (stating that, under New Mexico law, warden was responsible for policies or customs that operated and were enforced by subordinates at the detention center).

As Jail Administrator, Mr. Salcido had responsibility for the execution of the policies and procedures whereby CCDC employees booked detainees into the jail and transported them to the courts when ordered to do so by the courts.  The jail appears to have relied on the court to issue a Transport Order before transporting a detainee to court.  The record, in Plaintiff's favor, also shows that Mr. James attempted to file a couple of grievances at the jail, but they were denied or he received no answer, and he was told that there was no way to file a grievance about being in jail too long without a court date.  Plaintiff seeks in discovery additional information concerning the reasons for not transporting a detainee to court without a transport order, who at the jail handled Plaintiff's booking paperwork, who communicated Plaintiff's custodial status to the state courts, who handled Plaintiff's grievance paperwork, and whether Defendant Salcido had

31

knowledge of prior incidents in which pretrial detainees arrested on a warrant were held in the CCDC for a significant period of time without a court appearance. This information is connected to whether Defendant Salcido's jail policy, or lack thereof, caused Plaintiff's prolonged detention without a first appearance or bail hearing and to whether he acted or failed to act with deliberate indifference. *See Schneider v. Grand Junction Police Dept.*, 717 F.3d 760, 768-69 (10th Cir. 2013) (explaining the causal connection can be established by showing defendant set in motion events he knew or reasonably should have known would cause others to deprive plaintiff of his constitutional rights and that policymaker is deliberately indifferent when he deliberately or consciously fails to act when presented with obvious risk of constitutional harm that will almost inevitably result in constitutional injury of type experienced by plaintiff).

Defendant Salcido is thus not entitled to qualified immunity at this time, before Plaintiff has an opportunity to discover the requested information regarding Defendant Salcido's policies and actions. *Cf. Wilson*, 715 F.3d at 857-58 (denying qualified immunity to warden because allegations, taken as true, including that warden had policy of holding citizens without pending criminal charges until court filed orders of release sua sponte, established warden promulgated policies that caused constitutional harm of prolonged detention without probable cause hearing); *Hayes*, 388 F.3d at 674 (denying qualified immunity to jail administrator because he could not reasonably believe that holding person in jail for 38 days without bringing person to court for prompt first appearance was constitutional where he helped promulgate policy to wait for court order to bring detainee to court and where he made conscious decision to do nothing after receiving detainee's grievance); *Armstrong*, 152 F.3d at 578-79 ("A policy that ignores whether the jail has the authority for long-term confinement seems to be a policy of deliberate indifference. Furthermore, jailers hold not only the keys to the jail cell, but also the knowledge of

32

who sits in the jail and for how long they have sat there. They are the ones directly depriving

detainees of liberty…. The jail knew … that the detainees needed to appear before the court.

Despite this knowledge, the jail promulgated a policy under which it abdicated responsibility.

The jail acts at its own peril if it passes responsibility off on another party—whether the courts or

the prosecutor. While the Constitution does not impose an affirmative duty on jail officials, it

does hold them responsible when their failure to devise adequate policies results in an injury.");

*Oviatt*, 954 F.2d at 1477-78 (holding that final policymaker with respect to internal procedures at

detention center could be liable for prolonged detention without a first appearance where

policymaker failed to take action to create procedure to detect inmates who had not received

arraignment that would have enabled them to avoid unconstitutional incarceration).

### c.      Eighth Amendment (Count III)

The Eighth Amendment's excessive bail provision is binding upon the states under the

Fourteenth Amendment.  *Meechaicum*, 696 F.2d at 791. The Tenth Circuit has explained the

prohibition of excessive bail found in the Eighth Amendment as follows:

> The Eighth Amendment's prohibition against excessive bail is the foundation of a
> bail system which, by conditioning release on the offer of financial security, seeks
> to reconcile the defendant's interest in, and society's commitment to, pretrial
> liberty with the need to assure the defendant's presence at trial.  Bail is excessive
> when set at an amount higher than necessary to insure the appearance of the
> accused at trial. Because the practical effect of excessive bail is the denial of bail,
> logic compels the conclusion that the harm the Eighth Amendment aims to
> prevent is the unnecessary deprivation of pretrial liberty.

*Id.* (internal quotations and citations omitted).  The Eighth Amendment does not, however,

provide a right to bail in all cases; instead, it prohibits excessive bail in those cases in which it is

proper to grant bail.  *See Salerno*, 481 U.S. at 754 (quoting *Carlson v. Landon*, 342 U.S. 524,

545-46 (1952)).

Assuming for the purposes of argument only that Plaintiff's excessive bail claim can be

analyzed under the Eighth Amendment, the Sheriff Defendants argue they are entitled to summary judgment because Plaintiff waived his right to bail in Arizona, and once he arrived at the CCDC, none of the Sheriff Defendants had any control over Plaintiff.  Defendant Salerno likewise argues he is entitled to summary judgment on Count III because he was merely following the instructions on the face of the "No Bond" warrant, and that because the district court was alerted to the fact that Plaintiff was detained in the CCDC within one day of his incarceration, it was up to the district court to set the hearing to consider whether the "No Bond" hold should be reevaluated.

The Tenth Circuit has stated that the Eighth Amendment's excessive bail clause is aimed to prevent the unnecessary deprivation of liberty.  For the reasons given above, the discovery Plaintiff seeks is relevant to the determination of the constitutionality of Defendants' actions and policies and which of the Defendants, if any, may be held liable for his prolonged detention.  The Court will therefore not grant summary judgment to any of the Defendants on the Eighth Amendment claim at this time.

###    B.    State Law Claims

Defendants argue that they are entitled to summary judgment on the state law claims against them.  Plaintiff, however, has shown that Rule 56(d) discovery is relevant to the issues of whether Defendants knew they had no lawful authority to prolong Plaintiff's detention without bringing him to court for a first appearance or bail hearing, whether they had and breached duties in the operation of the jail and in maintaining the records and communications thereof, and whether they directly failed to or had responsibility for a policy of failing to bring Plaintiff and/or other detainees to court without unnecessary delay.  Because Plaintiff has shown that he cannot yet present all of the facts essential to justify his opposition to Defendants' motions for

summary judgment on the state claims, the Court will deny the motions for summary judgment at this time with leave to re-file the motions in light of the facts discovered after the completion of discovery.

**IT IS THEREFORE ORDERED** that

(1)     Plaintiff's Rule 56(d) Motion to Deny, Defer Ruling on, or Extend Time to Respond to Defendants' Motions for Summary Judgment (**ECF No. 44**) is **GRANTED in part and DENIED in part** as follows:

(a)     Plaintiff's request to deny summary judgment and permit discovery on his Fourth Amendment claim in Count II is **DENIED**, and

(b)     Plaintiff's request to deny summary judgment and permit discovery on all other claims is **GRANTED**.

(c)     Plaintiff's request to extend time to respond to Defendants' motions for summary judgment is **DENIED AS MOOT**.

(2)     Defendant Frank Salcido's Motion for Summary Judgment and Memorandum of Points and Authorities in Support Thereof (**ECF No. 33**) is **GRANTED in part and DENIED in part** as follows:

(a)     Defendant Salcido's request for summary judgment on Plaintiff's Fourth Amendment claim in Count II is **GRANTED** based on qualified immunity, and

(b)     Defendant Salcido's request for summary judgment and qualified immunity on all other claims is **DENIED** at this time, with leave to re-file in its current or in an amended form at the close of discovery.

(3)     Defendant Johnny Valdez, Tony Mace, Jr., and Hank Goke's Motion for

35

Summary Judgment (**ECF No. 37**) is **GRANTED in part and DENIED in part** as follows:

(a)      Defendants' request for summary judgment on Plaintiff's Fourth Amendment claim in Count II is **GRANTED** based on qualified immunity, and

(b)      Defendants' request for summary judgment and qualified immunity on all other claims is **DENIED** at this time, with leave to re-file in its current or in an amended form at the close of discovery.

(4)      The **STAY** of discovery in this case is **LIFTED** to the limited extent of permitting the discovery requested in Plaintiff's Rule 56(d) motion.

**UNITED STATES DISTRICT JUDGE**